**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**STEVEN DURAN,**

     **Plaintiff,**

vs.                                                      Civ. No. 04-0126 WPJ/LCS

**ADDUS HEALTHCARE, TOM GAMMILL P.A.,
a/k/a DR. TOM GAMMILL; MARY JOE CAFFEY;
JAMES VAN LOAN; NEW MEXICO
DEPARTMENT OF CORRECTIONS CENTRAL
MINIMUM RESTRICT UNIT; et al. (each to be sued in
official and individual capacities)**

     **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

     **THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment on November 15, 2004. (Doc. 28). On February 19, 2004, the assigned United States District Judge referred this matter to the undersigned United States Magistrate Judge to submit proposed findings of fact and recommendation for disposition of this case pursuant to 28 U.S.C. § 636(b)(1). The Court, having considered the record, arguments of counsel, relevant law, and being otherwise fully advised, recommends that Defendants' Motion is well-taken and should be **GRANTED in part** and that Plaintiff's remaining state claims be **REMANDED** to state court.

     **PROPOSED FINDINGS**

     1.     As the District Judge discussed in his Opinion entered on August 31, 2004, Plaintiff

stated that on September 29, 2003 he was seen by Defendant Gammill who ordered Defendant Caffey to give Plaintiff a tuberculosis injection. (Complaint at ¶ 10, Doc. 1; Doc. 22 at 2). Plaintiff alleged that Defendant Caffey mistakenly gave him a tetanus injection and that as result, his arm was swollen, red, itching, and a lump had formed under his skin. (*Id.* at ¶¶ 12, 17; Doc. 1; Doc. 22 at 2). On October 3, 2003, Nurse Maribel told Plaintiff that he would receive hydrocortisone and Benadryl for the condition. (*Id.* at ¶ 13; Doc. 1, Doc. 22 at 2). Plaintiff alleges that as a result of the incident he has suffered continuing physical pain, scarring, disfigurement, and great mental anguish. (*Id.* at ¶ 30; Doc. 1; Doc. 22 at 2).

  2. Also as the District Judge outlined, Plaintiff filed his Amended Complaint, which amends only portions of his Complaint by adding more claims, alleging that Defendants: 1) violated his Fourth, Eighth, and Fourteenth Amendment rights under the United States Constitution, 2) violated his rights under Article II, Sections 10 and 18 of the New Mexico Constitution, 3) violated his civil rights under 42 U.S.C. § 1983, 4) violated his rights under the New Mexico Tort Claims Act, 4) committed medical malpractice, 5) were grossly negligent and 6) conspired to keep information from him. (Amended Compl. at 1; Doc. 10; Doc. 22 at 2). Plaintiff seeks a declaratory judgment as well as an award of compensatory damages in the amount of $300,000 and punitive damages in the amount of $50,000. (Amended Compl. at 8; Doc. 10; Doc. 22 at 2). In his Memorandum, Opinion and Order, the District Judge dismissed Plaintiff's claims under the Fourth Amendment and deferred his discussion of Plaintiff's claims pursuant to the New Mexico Constitution. (Doc. 22 at 6).

  3. The grievance procedure that is in place at New Mexico Department of Corrections Central Minimum Restrict Unit ("CMRU") states "a written copy and oral summary of this policy

and procedure will be provided to each inmate during orientation. . .and thereafter upon reasonable request at the expense of the inmate" and defines exhaustion of administrative remedies as "completion of the grievance process through the Department level appeal." (Def's Attach. Ex. E; Doc. 24) The grievance policy also noted that in addition to written notification, inmates would also receive a "detailed oral explanation of the grievance procedure" during orientation. (*Id.*)

4. The grievance procedure states that a written grievance should be filed using the Inmate Grievance Form, which is readily available to all inmates in various locations within the institution. (*Id.*) If the Grievance Officer does not respond to the grievance in writing within two days after receiving the grievance, the Grievance Officer is to notify the inmate in writing as to the status of the grievance. (*Id.*) The procedure also states that "an inmate must complete a separate grievance form for each issue grieved." (*Id.*) The Grievance Officer is to complete his report and recommendation and deliver it to the Warden for review within 20 days of the date when inmate filed his grievance. (*Id.*) The Warden or designee will review the grievance and make a decision within 15 days of receiving receipt of the grievance. (*Id.*) The inmate also will be informed in writing of the Warden's decision within 15 days of the Warden's receipt of the grievance. (*Id.*)

5. Inmates are also informed of their right to appeal the decision of the Warden. (*Id.*) Inmates can appeal the decision of the Warden by completing the appeal portion of the Inmate Grievance Form and must deliver the form to the Grievance Officer within 5 calendar days of receiving the Warden's decision. (*Id.*) The Grievance Coordinator will complete his report and recommendation and deliver it to the Secretary for review within 25 days of receiving the appeal. (*Id.*) The Secretary or a designee will render a final decision on the grievance within 10 calendar days of receiving the appeal. (*Id.*)

6.	Plaintiff filed a grievance on September 3, 2003 stating that on Monday, September 29, 2003 Defendant Gammill asked Defendant Caffey to administer a tuberculosis injection to Plaintiff and Defendant Caffey mistakenly gave Plaintiff a tetanus injection. (Def's. Ex. A, Doc. 24). Plaintiff stated that due to the injection, his arm became swollen, red, and itchy. (*Id.*) He also stated that Defendant Caffey should pay more attention when administering injections. (*Id.*) Plaintiff requested the following relief: that he be told what he was injected with, the name of the medication, the amount of the injection, possible side effects of both tetanus and tuberculosis injections, any long term effects the injection could cause, and a blood test to prove what sort of injection he was given. (*Id.*) Maribel Arregoitia, LPN, issued a letter dated October 7, 2003 which stated that Plaintiff was erroneously given 0.1ml of Tetanus Toxoid on his right arm, that he was made aware of the error by Tom Gammill, P.A., and that he was prescribed treatment for the local reaction. (*Id.*) On October 17, 2003, Defendant Van Loan, Grievance Officer, issued a response stating that the problem had been addressed, that Plaintiff had been given the relevant information, and that no further action was necessary. (*Id.*)

7.	Defendants' filed their Motion for Summary Judgment on November 15, 2004, alleging first that they should be granted Summary Judgment because Plaintiff failed to exhaust his administrative remedies and two, even if the Court finds the Plaintiff has exhausted his administrative remedies, his claims have no merit. (Doc. 28). Plaintiff filed his Response on December 15, 2004. (Doc. 32).

**STANDARD**

8.	This court liberally construes *pro se* litigants' pleadings and holds them to a less stringent standard than required of those prepared by a lawyer. *See Gillihan v. Shillinger*, 872 F.2d

935, 938 (10th Cir. 1989). At the same time, the court may not assume the role of advocate for the *pro se* litigant, and need not accept as true unsupported conclusory allegations. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the Court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

    9.    The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy is burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

10.     If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof.  *See Muñoz*, 221 F.3d at 1164.  It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 586.  An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion.  *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1313 (10th Cir. 1999).  The substantive law at issue determines which facts are material in a given case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*

**ANALYSIS**

**Exhaustion of Administrative Remedies**

11.     Defendants claim that they are entitled to summary judgment because Plaintiff has failed to exhaust the requisite administrative remedies.  The Prison Litigation Reform Act ("PLRA") requires that available administrative remedies be exhausted prior to filing an action with respect to prison conditions under 42 U.S.C. § 1983.  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  Further, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."  *Id.*  Congress has eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be 'plain, speedy, and effective' before exhaustion could be required.  *Booth v. Churner*, 532 U.S. 731, 739 (2001).  Even where the available remedies would appear to

be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Id.* Administrative review by corrections officials is intended to reduce the quantity and improve the quality of prisoner suits by giving prison officials an opportunity to satisfy an inmate's complaint and perhaps prevent litigation. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1184 (10th Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 524-525 (2002)). The PLRA's exhaustion requirement applies to all suits about prison life. *Porter*, 534 U.S. at 525.

      12.      As the Tenth Circuit noted, "inmates must exhaust administrative remedies so long as there is possibility of at least some kind of relief." *Ross*, 365 F.3d at 1187 (citing *Booth*, 523 U.S. at 738). On September 3, 2003 Plaintiff filed a grievance stating that on Monday, September 29, 2003 Defendant Caffey was to administer a tuberculosis injection to Plaintiff and Defendant Caffey mistakenly gave Plaintiff a tetanus injection. (Def's. Ex. A, Doc. 24). Plaintiff stated that due to the injection, his arm became swollen, red, and itchy. (*Id.*) Plaintiff requested that: that he be told what he was injected with, the name of the medication, the amount of the injection, possible side effects of both tetanus and tuberculosis injections, any long term effects the injection could cause, and a blood test to prove what sort of injection he was given. (*Id.*) A letter dated October 7, 2003 indicate that Plaintiff was erroneously given 0.1ml of Tetanus Toxoid on his right arm, that he was made aware of the error by Tom Gammill, P.A., and that he was prescribed treatment for the local reaction. (*Id.*) On October 17, 2003, Defendant Van Loan, Grievance Officer, issued a response stating that Plaintiff had been given the relevant information, that Plaintiff was given treatment for the reaction on his arm, and no further action was necessary. (*Id.*) Thus, it appears that Plaintiff exhausted his administrative remedies with regard to his *grievance* because he received all the relief he could and an appeal would not have resulted in further relief. *Ross*, 365 F.3d at 1187.

13. While Plaintiff appears to have received all of the relief he could with regard to his grievance, his federal complaint adds claims that were not included in his grievance and thus are not exhausted. That is, to the extent that Plaintiff's Complaint speaks of an inquiry regarding the medication with which he was injected, the Court agrees that Plaintiff has exhausted any such claim. However, his claims with regard to deliberate indifference in violation of 42 U.S.C. § 1983 and conspiracy have not been exhausted.

14. In the case of prisoner civil-rights complaints, the prisoner must "explain his attempts to exhaust available administrative remedies." *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1211 (10th Cir. 2003). Further, "a prisoner must . . .attach copies of administrative proceedings or describe their disposition with specificity. *Id.* Should a prisoner fail to make "particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e." *Id.* (citation omitted). While Plaintiff alleges that he has exhausted his administrative remedies, he does not present to the Court copies of administrative proceedings that his claims *as outlined in his Complaint and Amended Complaint* were ever brought to the attention of CMRU through the grievance process. *See* Docs. 30, 31; *Steele*, 355 F.3d at 1211. Plaintiff did state in his grievance that Defendant Caffey should pay more attention when administering injections and made mention of Defendant Gammill, but he never indicated anything further with regard to the Defendants he names in his Complaint[1], nor to the additional claims of deliberate indifference and conspiracy he presents therein. (Def's. Ex. A, Doc. 24). Thus, Plaintiff did not put Defendants on notice, nor did he give prison officials an opportunity to satisfy

---

[1] The Defendants Plaintiff names in his Complaint and Amended Complaint in addition to Defendants Gammill and Caffey are Addus Healthcare, James Van Loan, and New Mexico Department of Corrections Central minimum Restrict Unit.

his complaint. *Ross*, 365 F.3d at 1184 (10th Cir. 2003) (citing *Porter v. Nussle*, 534 U.S. 516, 524-525 (2002)).  Because the PLRA has a total exhaustion requirement, and Plaintiff has not exhausted all of his claims against all Defendants, this action with respect to prison conditions under 42 U.S.C. § 1983 and conspiracy should be dismissed in its entirety without prejudice.  *Ross*, 365 F.3d at 1189.

**State Claims: Supplemental Jurisdiction**

15. Having determined that summary judgment should be granted on Plaintiff's federal claims, I must determine whether it is appropriate for this Court to retain supplemental jurisdiction over the matter.[2]  The exercise of supplemental jurisdiction is discretionary. *New Mexico v. General Electric Co.*, 335 F. Supp. 2d 1157, 1176 (D.N.M. 2003) (citing *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172 (1997)).  A federal district court may decline to exercise supplemental jurisdiction over a state law claim if: 1) the claim raises a novel or complex issue of State law; 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, 3) the district court has dismissed all claims over which it has original jurisdiction, or 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c) (2000).

16. Although a district court may decline to exercise supplemental jurisdiction after all federal claims have been dismissed, such action is not required. *United International Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1220 (10th Cir. 2000)("[A] district court has the constitutional power to exercise supplemental jurisdiction over state claims even after a federal claim has been dismissed, provided the federal claim was not insubstantial from the outset.").  The factors

---

[2] Plaintiff claims that his rights under the New Mexico Constitution, Article II, Sections 10 and 18 were violated, that Defendants CMRU, Addus Healthcare and Gammill's failed to train and supervise Defendant Caffey, and that Defendants CMRU and Addus Healthcare's failed to train and supervise Defendant Gammill. (Doc. 10).

a court should weigh in determining whether to retain supplemental jurisdiction over state law claims include, "judicial economy, convenience, fairness and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Because the only remaining claims are state claims and because the case was originally removed from State court, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state claims.

### RECOMMENDED DISPOSITION

I recommend that Defendants' Motion for Summary Judgment be **GRANTED in part** and that Plaintiff's Complaint with respect to his federal claims regarding prison conditions be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies and that his state claims be **REMANDED** to state court. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**